FREEMAN VS BRADFORD.

*Of contracts of a minor, void and voidable.*
*Of the control of a guardian over his ward's lands.*

1. It seems to be the better opinion, that the deeds of an infant, conveying lands upon a full equivalent, given or secured, are embraced within the description of contracts, merely voidable.
2. But in respect to the contracts of a minor, conveying his lands, the guardian is not to be viewed in the light of a stranger.
3. The dominion and authority of a guardian over the real estate of his ward, is conclusive, against the control or interference of the ward, during his minority.
4. And the deed of an infant, made during the continuance of his wardship, conveying his lands, passes no title as against his guardian.

This was an action of trespass, to try titles determined in the Circuit Court of Madison county. The action was brought in the name of David Bradford against Sarah Freeman; and the defendant, under the plea of not guilty, defended the suit as the guardian of Young E. Freeman, a minor, under whom the plaintiff claimed title.

There was inconsistency in the evidence produced, in regard to the minority of Young E. Freeman, from whom, (after proving a chain of title preceding the conveyance relied on,) the plaintiff showed a deed, conveying the premises in dispute, in consideration of the sum of six hundred dollars.

Upon the proof in relation to these matters, the

Court was requested, on the part of the defendant, to charge the jury, "that if they believed said Young E. Freeman, was, at the date of his deed to Bradford, under the age of twenty-one years, and was born, as stated by (a particular,) witness,--then they must find for the defendant;" which charge the Court refused to give, and instructed the jury, that "if they believed the sale (by Young,) an advantageous one,—then the defendant could not defend as guardian, but they must find for the plaintiff. But if not an advantageous one, then they must find for the defendant."

To which the defendant excepted, and a verdict having been rendered for the plaintiff, the defendant sued out a writ of error to this Court.

*M'Clung* for the plaintiff in error—*Robinson*, contra.

COLLIER, J.—The defendant in error, brought an action of trespass against the plaintiff in the Circuit Court of Madison, as well to try title as to recover damages for the occupancy of a tract of land, situate in that county. The cause was tried on the plea of *"Not Guilty."*

From a *bill of exceptions* in the record, it appears that the defendant, after tracing title to Young E. Freeman, produced a deed from Young E. Freeman to himself. It was admitted that the plaintiff had been duly appointed and qualified as guardian of the said Young, and defended as such. The testimony in regard to the age of the grantor, was contradictory. The evidence of some of the wit-

nesses, tended to shew that he was not only under the age of twenty-one years, when the deed was executed, but at the time of the trial—While that of others, went to shew that he had attained his majority before the date of his conveyance.

The plaintiff in error, upon this state of facts, asked the Court to charge the jury, "that if they believed said Young was, at the date of his deed to Bradford, under the age of twenty-one years, and was born as stated by the first witness," (on the ninth of September, eighteen hundred and sixteen,) "then they must find for the defendant, which the Court refused; but instructed them, if they believed the sale an advantageous one, then defendant could not defend as guardian, but they must find for the plaintiff; but if not an advantageous one, then they must find for the defendant."

To which instruction, the plaintiff in error excepted, and brings her case here, by writ of error.

The instructions given in the Circuit Court to the jury, considered the case as depending upon the distinction between void and voidable contracts of infants, and their legal attributes, without considering the interest of the guardian, in the estate of the ward committed to her control.

The law, it is true, distinguishes the contracts of minors, by declaring that some shall be voidable, while others are absolutely void. In respect to the first, it is a general rule, that they can only be avoided, by the infant himself, or his legal representatives,—the latter being invalid in themselves, can-

not be set up as conferring a right, even against a stranger.

It is difficult to draw with precision, the line between the void and voidable acts of infants. Upon examination we find the decisions of the Courts, characterized by contradiction and confusion.— Lord Chief Justice *Eyre* in *Keane vs Boycott*,[*] in attempting to reconcile authority, and ascertain the true principle on which the distinction depended, held the contract to be void, when the Court could pronounce it to be to the infant's prejudice, and good, when for his benefit. Judge *Story* considered, that the reasoning of the Lord Chief Justice, stood upon a solid basis, and Chancellor *Kent*, thought the point was not susceptible of greater precision. The law on this subject is fully examined in 10 Pet. R. 58.—1. Mason's R. 82.—1 Johns. cases 127. —2 Kent's Com. Sec. 31—& 2. Dane's Ab. Chap. 35.

[*2 H. Bla. 511.]

It is the better opinion that the deeds of infants, conveying lands upon a full equivalent, given or secured, are merely voidable,—so that in the instruction to the jury upon the abstract question of law, there is no error. Yet it admits of controversy, whether it is not wholly inapplicable to the case at bar, and whether the instruction asked for, should not have been given. The opinion of the Circuit Court, contemplates the guardian, in the attitude of a stranger, instead of one entitled to the possession of the estate of her ward. To test its correctness, it is material to ascertain the extent of the authority of the guardian, and to inquire into his right, to control the interest of his *ward*.

5 P.    35

Before entering upon this inquiry, let it be pre-
mised, that we deem it unnecessary to consider the
various descriptions of guardianships, known to the
common law.   So far as the estate of the infant is
concerned, they are all reducible to guardians as-
signed by the Orphan's Court, as exerting a super-
vision over the interest of minors, who are father-
less,—to guardians chosen by infants, (after attain-
ing to the age of discretion,) under the sanction of
that Court,—and to such as are appointed by the
will of the father.   When they have qualified, the
powers and attributes of each are the same.

Guardians in socage are mentioned *eo nomine,*
in our statutes, but they exist alone in name, and
could not exist otherwise in this State, where so-
cage tenure is unknown, and all titles are allodial;
where estates tail are abolished, and the inheri-
tance descends to all who are of kin, as directed
by our statutes of distribution and descents.*   Yet
must regard be had, to the attributes of this kind
of guardianship, as defined by the common law, as
furnishing rules by which to admeasure the duties
and powers of guardians here, in the absence of
statutes.

The guardian, whether assigned by the Court,
chosen by the infant, or appointed by the will of the
father, shall execute bond "with good securities, in
a sufficient sum for the faithful execution of his of-
fice and trust."   Again, he is required, within three
months after his appointment and acceptance of his
office to "deliver into the office of the Register,"
(now clerk,) "of the Orphans' Court, an inventory
on oath, of all the estate, real and personal, which

*2 Dane's
Ab. 3 & 4.
7 Cowen'
Rep. 36.
2 Wend.
R. 153.

FREEMAN *vs* BRADFORD.

he shall have received or taken possession of, to be entered of record; and shall exhibit once in every year and oftener, if thereunto lawfully required, an account of the product of said estate, and of the sale and disposition of such product and disbursements, &c," It is also declared, that if the guardian be in default in the performance of these duties, he shall, by an order of the Orphans' Court, to which he is answerable, be summoned, and if he remain in default, be compelled to perform his duty, or be displaced.* *Aik Dig. 1 Ed. 220.

Such are the duties and responsibilities of guardians, so far as they are prescribed by the legislature: but for the purpose of ascertaining their powers, rights and obligations more fully, we must refer to the common law, as the proper source of information.† †2 Dane's Ab. 6. By this we are informed, that the guardian in socage has the custody of the lands, and is entitled to their profits for the benefit of his ward.—*Byrne & wife vs Van Hoesen.*‡ That he has the control over the rents and profits of his ward's estate, and may lease the land without leave of the Court.§ ‡5 Johns. R. 66. §1 Johns. C. R. 3,— 561. 7 Johns. C. R. 150-4.

The possession of the guardian intitles him to maintain trespass against a wrong-doer, for an injury to the estate of his ward.¶ He may bring a writ of right of ward, and recover the land and damages, as well as the body of the ward.‖ So he may have an ejectment of ward, and if the ward enters and ousts him of the land, he may recover it by a writ of intrusion of ward.* He may make a lease for years, during the wardship upon which an ejectment is maintainable.† And he may as the Greene R. 67. 3 N. Hum. R. 163. ¶5 Johns. R. 66. ‖14 Vin. Ab. 190 Pl. 1 & 2 *14 Vin. Ab. 191. N. pl. 1 n. †14 Vin: Ab. Pl. 3- 4 & 6.

temporary proprietor, grant a copy-hold in rever-sion, or remainder, in his own name.*

The control of the guardian over the property of the ward, was well considered by the Court of Appeals of Virginia, in the case of *Truss vs Old.*† And it was determined that one who had stipulated with the guardian, for the purchase of trees upon the land of the ward, was not liable to an action of trespass at the suit of the ward, though the guardianship had ceased,—and that even if the defendant had entered, cut and carried away the trees, the ward could not have maintained trespass, but the action properly belonged to the guardian, who must have accounted to his ward. And the Court further intimate, that if trees become severed from the soil by cutting, or are thrown by a tempest or otherwise, the guardian would have the right to sell them, as perishable property.

In the case of *Eyre vs The Countess of Shaftesbury,*‡ it was held that a guardian in socage, has an authority coupled with an interest, and may bring a writ of ravishment of ward on the infant's being taken from him. And though the damages, by an English statute go to the infant, yet the declaration must lay it *ad damnum* of the guardian.

So in *The People vs Byron,*§ it was determined that guardianship in general, is a power coupled with an interest, and must survive. That the guardian has a vested interest in the estate of his ward—he may bring actions relative thereto, in his own name, make avowry &c. And that he has in all respects, the dominion, *pro tempore*, of the infant's estate, and possesses more than a naked au-

FREEMAN *vs* BRADFORD.

thority. And it is upon this principle, that the guardian in socage, may justify the occupation of the land against the heir himself.* <span>*Keilw. 46. b.</span>

Thus stands upon authority, the power of the guardian over the estate of his ward. A power which expressly recognises his right to the possession, and inhibits any act to his prejudice, not only by a stranger, but by the ward himself.

The guardian derives his right to the dominion of the estate, not from an act of the ward, but by the appointment of the Court, acting under the authority of the law. If the ward can annul the authority thus conferred, at his mere volition, either by an express declaration or by an act, incompatible with its continuance, it must be upon the hypothesis, that the guardianship of the estates of minors, as understood at common law, exists here under modifications which have not, and in our judgment cannot, be pointed out.

Understanding it to be ascertained by express adjudication, that the infant cannot dispossess the guardian of his property, until the expiration of his wardship,—upon principle it would seem, that he could not impart that right to another. It is a principle in *hydrostatics*, that the stream never rises above its fountian, so in law, as well as in morals, it may be laid down as an axiom, that no one can give a greater power, than he himself posseses.

Young E. Freeman, not being entitled to an action during the continuance of his wardship, to eject the plaintiff from the possession of his estate, his deed passed no title to the defendant, as against his guardian. This view of the case shews it to

be immaterial, whether the deed was void or voidable, as against the grantor. The plaintiff's rights are the same, whether it be the one or the other.

The judgment must be reversed, and the cause remanded.

HOPKINS, C. J. not sitting.