Cole *v.* Pennoyer.

---

STEPHEN COLE, Plaintiff in Error, *v.* A. L. PENNOYER, Defendant in Error.

ERROR TO MORGAN.

The implied contracts of an infant for necessaries, are binding upon him.

The appointment of an attorney by an infant is absolutely void.

Conveyances made by an infant in person, are voidable only, to be confirmed or repudiated at his discretion after he arrives at majority.

A minor may revoke a conveyance within a reasonable time after he becomes of age. In this State, the statute requires that if a conveyance by a minor is

to be revoked by him, he must commence proceedings within three years after the disability is removed.

A deed which binds the grantor and actually conveys the legal title, and which can only be defeated by some affirmative act, by the grantor or his representatives, and which to the world is good and valid, constitutes a claim and color of title, under the eighth section of the twenty-fourth chapter of the Revised Statutes.

Cole commenced his action in ejectment to recover the west half of the north-west quarter of section twenty-four, in township thirteen north, range eleven west. Pennoyer pleaded not guilty. A trial was had before Woodson, Judge, a jury being waived, and judgment entered for Pennoyer as of May term, 1852, of the Morgan Circuit Court. A bill of exceptions was taken, which shows that the land in question was entered by and patented to Cole when he was about eighteen years old. His father, George Cole, was in possession of the land, and his son, the plaintiff in error, resided with him in 1833. In that year, the father sold the land to one Arthur, on a credit, and procured the plaintiff, then only nineteen years of age, to make a deed, and the father surrendered the possession of the land to Arthur. The land was never paid for. George Cole moved to Iowa, taking his son with him. Stephen Cole remained in Iowa and Missouri until 1840, when he was back in Illinois on a visit, until about two years before the commencement of this suit. Pennoyer proved that Arthur sold said land, and conveyed to one Masson, and gave him possession in 1836, and that said land was several times sold and regularly conveyed down to Pennoyer, and that Pennoyer and those under whom he claims, have been in actual possession of the land, and paid all taxes since 1839. That Stephen Cole became of age in June, 1835.

M. McConnel, for plaintiff in error.

D. A. Smith, for defendant in error.

Caton, J. The question as to what contracts by an infant are absolutely void, or only voidable, is one upon which there has been a very considerable diversity of opinion in different courts. All agree that the implied contracts of an infant for necessaries, are binding upon him, as in case of an adult, and all agree that the appointment of an attorney by an infant is absolutely void. The difficulty seems to have been in laying down a rule by which to determine satisfactorily what other contracts made by an infant are void, or merely voidable.

Cole *v.* Pennoyer.

It was laid down by Lord Mansfield, in Zouch *v.* Parsons, 3 Burr. 1794, that all contracts which take effect by the delivery of the infant himself, are voidable, and not void; and that it is only such acts as take effect by the delivery of another for the infant, which are absolutely void. He denies the doctrine often asserted, that a lease by an infant reserving no rent, or the surrender of a lease without consideration, are void, as being manifestly prejudicial to his interests; and he says "there is no instance where the other party to a deed can object on account of infancy. Consequently, the infant may let the surrender stand, or avoid it: which proves it to be voidable only." Not long after, in the case of Keane *v.* Boycott, 2 H. Black. 511, Eyre, Ch. J., laid it down as a rule, that those deeds which the court could see and pronounce to be prejudicial to the interests of the infant, were void; while those which were manifestly to the advantage of the infant, as for necessaries, were binding, while all others were merely voidable, and might be confirmed or repudiated after he attains his majority. This rule is approved by Chancellor Kent in his Commentaries, understanding, as he evidently does, that it does not conflict with the case of Zouch *v.* Parsons, for he says the doctrine of that case "has been recognized as law in this country, and is not now to be shaken. On the authority of that case, even the bond of an infant has been held to be voidable only, at his election. It is an equitable rule, and most for the benefit of the infant, that conveyances to and from himself, and his contracts, in most cases, should be considered to be voidable." 2 Kent, 236. Mr. Wallace, in a very learned note, where all the cases on the subject seem to be collected, says, "The numerous decisions which have been had in this country justify the settlement of the following definite rule, as one that is subject to no exceptions. The only contract binding on an infant is the implied contract for necessaries; the only act which he is under a legal incapacity to perform, is the appointment of an attorney. All other acts and contracts, executed or executory, are voidable or confirmable, by turn, at his election." If literally understood, there are certainly serious objections to the rule, that the court must, in every case, inquire whether the deed is for the benefit or to the injury of the infant, and thence determine whether it is void or voidable. In such an inquiry, is the court to look alone to the face of the deed? or shall it inquire into the circumstances of the transaction? If the former, the court must often be misled, for it is frequently the case that a deed for the conveyance of land shows but very little of the true character of the transaction, its object being merely to

transfer the legal title without a strict regard to the real induce-
ments and considerations which moved the party to the con-
veyance. If the rule be established, that the face of the deed
shall determine whether it was to the advantage or injury of
the infant, such deeds will always be framed with a view to
that, and will never fail to show an advantageous bargain for
the minor. There are serious objections, also, to requiring the
court to hear evidence showing the circumstances of the sale,
and thence determine the question of benefit or injury. In the
first place, it would interrupt the regular progress of the trial, by
a collateral inquiry about facts which when ascertained might
induce one to think the bargain advantageous, while another
would think it ruinous to the interests of the infant. But in
determining these questions, a certain regard must be had to
the interests of the public, — of those who may wish to pur-
chase the estate. A subsequent purchaser finding a regular
chain of title may be required to ascertain whether those
through whose hands the title has passed, were capable of
making an obligatory conveyance, and if he finds any of them
are infants, take his chance of a subsequent ratification of the
conveyance; but to require him to ascertain all the circum-
stances of the bargain, and from these to judge at his peril
what the opinion of courts might be of its beneficial character,
would leave the common assurances of the country in quite
too uncertain a condition. It is far better, in our judgments,
to hold all conveyances made by infants in person voidable
only, to be confirmed or repudiated by them as they may
choose, after they arrive at years of legal discretion. A review
of the authorities on this subject, would show that this rule
has been generally, if not universally adopted, and it is cer-
tainly most to the advantage of the infant, while it least sub-
serves the public interests. Leslie v. Frazier, Riley's Ch. R.
76. Cline v. Beebe, 6 Conn. 499; Drake v. Ramsey, 5 Ohio,
152; Freeman v. Bradford, 5 Porter, 270; Brackenridge v. Orms-
bey, 1 J. J. Marshall, 236; Bool v. Mix, 17 Wendell, 120;
Gillett v. Stanley, 1 Hill, 122.

Were a deed to be held to be void, it would be binding
upon neither party. The adult party might repudiate it as
well as the infant; whereas, if held to be voidable only, the
adult would be bound by it, leaving it optional with the infant,
after he attains his majority, to ratify it or not. With this
option, it cannot prejudice his interests. He is left to claim
the benefit of the bargain if a good one, or to reject it if he has
been overreached or imposed upon in his infancy. We have
no hesitation in holding in this case, that the deed made by

14*

the plaintiff during his minority was voidable, but not void. He had a right to revoke it within a reasonable time after he became of age. There are various modes in which the grantor after he becomes of age may disaffirm a conveyance made during his minority, one of which is by bringing an action of ejectment for the premises conveyed, as was done in this case. But this should, no doubt, be done within a reasonable time. Within what time the party should disaffirm the act or be considered to have approved it, it is unnecessary to determine, at least, so far as the conveyance of real estate is concerned, for we have a statute which has settled that question in this case. The eighth section of the twenty-fourth chapter of the Revised Statutes provides as follows: "Every person in the actual possession of lands or tenements under claim and color of title, made in good faith, and who shall for seven successive years continue in such possession, and shall also during said time pay all taxes legally assessed on such lands or tenements, shall be held and adjudged to be the legal owner of said lands or tenements, to the extent and according to the purport of his or her paper title. All persons holding under such possession by purchase, devise, or descent, before said seven years shall have expired, and who shall continue such possession, and continue to pay the taxes as aforesaid, so as to continue the possession and payment of taxes for the term aforesaid, shall be entitled to the benefit of this section." The ninth section prescribes the rule as to vacant and unoccupied land; and the tenth section exempts from the operation of the two preceding sections certain lands in which the public have an interest, and proceeds: "Nor shall they extend to lands or tenements when there shall be an adverse title to said lands or tenements, and the holder of such adverse title is under the age of twenty-one years, insane, imprisoned, *feme covert*, out of the limits of the United States, and in the employment of the United States, or of this State: . Provided, such person shall commence an action to recover such lands or tenements so possessed as aforesaid, within three years after such disabilities herein enumerated shall cease to exist, and shall prosecute such action to judgment." Whether a void deed would constitute such claim and color of title as is contemplated in this statute, it is not necessary for us now to inquire; that a deed which binds the grantee, and actually conveys the legal title, and which can only be defeated by some affirmative act, by the grantor or his representatives disaffirming it, and which to all the rest of the world is good and valid for all purposes, does constitute such claim and color of title, we cannot doubt. Should this be held not within the provisions

of the statute, it would be difficult to find one that would, short of an absolute and indefeasible title.   It was to quiet possessions held in good faith, but under defective titles, that this statute was passed, and not to give security to those who were already secure.   The bill of exceptions in this case shows that the plaintiff executed the deed in question in 1833, and that in 1835 he became twenty-one years of age, and after the lapse of sixteen years, he commenced this action, for the first time, so far as we know, claiming the title in opposition to his deed. Arthur, the immediate grantor of the plaintiff, took possession of the land.   From him, the title was regularly transferred to the defendant in this action, through several mesne conveyances, which were all regularly acknowledged and recorded; and those under whom he claims, have had the actual and continued possession, and have paid all taxes due thereon since 1839, a period of twelve years immediately antecedent to the commencement of this action.   During all of this time, and for the four previous years, the plaintiff had been of age, and legally capable of asserting his rights, had he chosen so to do; while the statute requires that he should have asserted them within three years after his disability was removed.   It is true, that this statute has been passed since he attained his majority, but the defendant has held possession, and paid the taxes more than seven years since its passage, and this entitles him to the benefit of the statute.

The judgment of the circuit court is affirmed.

*Judgment affirmed.*