## The People of the State of Illinois v. Fritz Griesbach.

### Gen. No. 11,314.

1.   FRONTAGE CONSENT—*power of tenant in common to give.* Where frontage consents are by ordinance made a prerequisite to the issuance of a dram-shop license, such a consent signed by a tenant in common is good for such number of feet as is represented by his undivided interest. (Merritt v. City of Kewance, 175 Ill. 537, explained.)

2.   FRONTAGE CONSENT—*power of minor to give.* In such a case, likewise, a minor at the age of seventeen years has sufficient legal capacity to give such a consent.

3.   LICENSE FEE—*when presumption of payment of, arises.* Where a dram-shop license has issued, the presumption is *prima facie* that the fee therefor has been duly paid where the license could not have otherwise issued except through the fraud or neglect of a public official.

4.   OFFICIAL DUTY—*presumption of performance of.* The law presumes, at least until the contrary appears, that a public official has done his duty.

The People v. Griesbach.

5. INSTRUCTION—*when, cannot be complained of.* An instruction which erroneously submits to the jury a mixed question of law and fact, cannot be complained of by the other party where he has caused to be given to the jury an instruction containing a like vice.

Information in the nature of a *quo warranto* to test the validity of dram-shop license. Appeal from the Circuit Court of Cook County; the Hon. JULIAN W. MACK, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1903. Affirmed. Opinion filed February 13, 1904.

**Statement by the Court.** The People filed an information in the nature of a *quo warranto* against appellee to test the validity of a license granted and issued to him March 4, 1903, by the mayor of Chicago, to keep a dram-shop at 5014 Cottage Grove avenue from that day until May 1, 1903. Appellee filed a plea in justification. There was a verdict in his favor upon which judgment was entered, and the People appeal.

The premises are situate in the local option district of the former village of Hyde Park, the ordinance of which relating to dram-shop licenses was by statute continued in force upon the annexation of the village to the city of Chicago. The ordinance provides that " any person who shall desire to obtain a license to keep a saloon or dram-shop shall    *    *    *    present his application in writing    *    *    * signed by a majority of the property owners according to frontage on both sides of the street in the block in which the dram-shop is to be kept."

It is claimed by the People that a majority of the property owners as required by the ordinance did not sign appellee's application for the license issued to him. Among the frontage was a lot with a front of 250 feet owned by five tenants in common, four of whom signed. It is conceded for all practical purposes that the remaining one did not sign. There was another lot fronting 214.34 feet owned by a minor seventeen years old. He signed for himself in the presence of his mother, his duly appointed guardian. She did not sign the application as guardian but only for her dower interest. Unless the owners of 200 feet of the 250 foot lot and of the whole of the other can be properly

regarded as a part of the " majority of the property owners,"
it is not denied that the required majority was lacking.

CHARLES S. DENEEN, State's Attorney, for appellant;
CHURCH, McMURDY & SHERMAN, of counsel.

. NICHOLAS MICHELS, for appellee.

MR. JUSTICE STEIN delivered the opinion of the court.
*First.* Counsel for the People contend that where prop-
erty is owned by tenants in common the signatures of all
must be obtained before the frontage can be counted, and
that if any number less than the whole sign, their signatures
are ineffective and cannot be counted for a proportionate
part of the entire frontage for the reason that each tenant is
seized of an undivided interest and that when one signs it
cannot be ascertained what particular part of the frontage
he has signed for.    In support of this contention counsel cite
Merritt v. City of Kewanee, 175 Ill. 537, saying " this is one
of that class of cases which the court sometimes finds relied
upon by both parties in support of their respective con-
tentions."    And so it is in the case at bar.    That was a peti-
tion for the confirmation of a special tax on contiguous prop-
erty for the making of a local improvement authorized by
an ordinance, and the statute required as a condition prece-
dent to the adoption of the ordinance that the owners of a
majority of the abutting property should petition for the
improvement.    For the purpose of deciding the case the
Supreme Court deemed it proper to assume that 3,736.6
feet would constitute a majority.    After having pointed
out that as to certain abutting lots owned by married women
" the petition was signed by their husbands in their own
names as owners and not as agents of their wives," the
court continue :    " It also appears that certain lots abutting
upon the improvement were owned by several tenants in
common, and that the petition was not signed by all of the
tenants in common.    For instance one person who owned
an undivided one-eighth part of a lot signed as the owner of
the whole of it.    After deducting from the number of feet

The People v. Griesbach.

purporting to be signed for by owners of the abutting property those lots and *parts of lots*" (the italics are ours) " which were owned by married women and by tenants in common, where the husbands signed as owners and where one tenant in common signed for the other tenants in common, the petition was not signed by the owners of a majority of the abutting property. * * * As the evidence shows that the petition in this case was not signed by the owners of a majority of the abutting property after excluding the signatures so made by married men and so made by tenants in common, then the ordinance * * * was invalid." Further on the court say : " So far as the tenants in common are concerned there is no claim that they had any authority either oral or written to sign the names of the other tenants in common. Neither is it claimed that there was any ratification by the tenants in common not signing, of the acts of those who did sign. It must therefore of necessity be true that the signature of one tenant in common of a lot was not the signature of the owners of the other undivided interests in the lot. It follows that each tenant in common who signed the petition only signed for the individual part of the lot which he owned, and not for the undivided portions thereof which he did not own."

Whether the entire lots owned by tenants in common had to be counted in order to constitute a majority or only those " parts " not specifically signed for, does not expressly appear from the report of the case. If the former be true, it was not necessary to a decision for the court to pass upon the power of a tenant in common to sign for his undivided interest; if the latter be true, it was. We are inclined to think that the latter was the case from the fact that the court speak of " lots and parts of lots which were owned by married women and by tenants in common." It does not appear that the lots owned by the women were divided into " parts," and presumably the words " parts of " stand and were meant for " interests in " lots owned by the tenants in common. In saying this we do not overlook the words, " after excluding the signatures so made by

married men and so made by tenants in common," found in the sentence immediately following as above quoted. Whether the signature of the tenant in common is here meant in so far as his own interest is concerned or in so far as he undertook to sign for the whole lot, is uncertain. It is entirely clear, however, that the court later on when concluding this part of the discussion announces that "it follows that each tenant in common who signed the petition only signed for the individual part of the lot which he owned," thus recognizing the power of the tenant to sign in his own behalf. To hold otherwise would be to add to the terms of the ordinance by prohibiting a tenant in common from exercising a right which it gives him in common with all other property owners. Had such been the intention of its framers, they would in all likelihood have said so. In this case, four out of five tenants in common having signed appellee's application, they must be deemed as having signed for four-fifths of the lot owned by the five.

*Second.* Charles Nottbohm, the minor, was seventeen years old when he signed the application. It is strenuously contended that his signature is void. Whether it is so or not depends upon the legal status and rights of an infant of or about the age of the one in question. Manifestly the law makes a distinction in that regard between minors of different ages. As said by Schouler in his treatise on Domestic Relations (3rd ed., sec. 392): "It is reasonable to suppose that they (infants) who are constantly growing become naturally competent for certain purposes long before they attain complete majority; and young men and women may well be allowed the exercise of more discretion than babes. Hence we find that infants of suitable age are allowed to contract a valid marriage; that males of the age of fourteen and upwards and females at the age of twelve could once dispose of personal estate by will and at fourteen may still choose or nominate their own guardians; that children of discretion have a voice in determining a right of custody and control." And in sec. 403 the same author says: "The strong tendency of the modern cases

is to regard all acts and contracts of infants as voidable only, and thus almost to obliterate the ancient distinction of void and voidable contracts altogether." And see Browne on Domestic Relations, 2nd ed., pp. 107–112. An infant may act as agent for an adult so as to bind the latter by a contract, Shaffer v. Kennington, 61 Ill. App. 59; he is not relieved from the operation of the rule of fellow-servants, Mills Co. v. Benson, 18 Ill. App. 194; Garland v. R. R. Co., 67 Ill. 498; he may act as a bailiff, McCann v. People, 88 Ill. 103; he is liable upon his implied contracts for necessaries, Cole v. Pennoyer, 14 Ill. 158; a deed made by him is voidable only, Keil v. Healey, 84 Ill. 104; he may execute a lease, Field v. Herrick, 101 Ill. 110. If of sound mind and memory a minor seventeen years old may be appointed executor, but in such case administration with the will annexed *may* be granted during his minority. Rev. Stat., ch. 3, sec. 3. Children under the age of sixteen years may be bound as apprentices, clerks or servants until they arrive at that age, with or without their consent. Rev. Stat., ch. 9, sec. 1. If above fourteen years of age, a minor may nominate his own guardian. Rev. Stat., ch. 64, sec. 3. Male persons over seventeen years of age may contract and be joined in marriage. Rev. Stat., ch. 89, sec. 33.

There is nothing on the face of the ordinance indicating a positive intention to grant or deny to minors the right of consent, unless an intent to grant it may be gathered from the failure to exclude them from the exercise of the right. It would have been easy to manifest a contrary intent by inserting the word "adult" before "property owners," as was done by the legislature in enacting that a majority of the owners of lands "who shall have arrived at lawful age" and desire to construct a drain may file a petition for that purpose (Rev. Stat., ch. 42, sec. 2); that when it is proposed to distribute the cost proportionately among the parties benefited, a petition shall be presented signed by a majority in number of the "adult" owners of the land (same chapter, sec. 85), and that on the petition of fifty "land owners who are legal voters" the county clerk shall give notice of a

vote for or against levying a tax for constructing certain roads (ch. 121, sec. 245). The public policy of this state as indicated by the foregoing decisions and legislation has been to enlarge rather than to limit the rights and powers of minors. If such a person can contract a lawful marriage, act as agent for others and as executor, and select his own guardian, it would seem as if in law he were possessed of sufficient intelligence and discretion to qualify him for passing upon the question of granting or withholding his assent to the establishment of a dram shop, even though his assent when once given be in such case irrevocable.

*Third.* Under the pleadings it devolved upon appellee to prove payment of the license fee. This the People contend he did not do. By the ordinance the fee is required to be paid in advance to the city collector. The license when granted by the mayor is issued by the clerk on notice to him from the collector that the license fee has been paid. Appellee's license was received in evidence without objection, and was *prima facie* proof of the fact of payment. It could not issue to him, if not paid for, without fraud or neglect on the part of the city collector. The law presumes that an officer does his duty. Here the court is asked to presume the contrary. It is quite true as counsel argues that appellee was bound to prove compliance with every requirement necessary to make the license valid. Still this was a proceeding in court like every other, and the ordinary rules of evidence obtained and applied.

*Fourth.* At the request of the People the jury were instructed that the burden is on the defendant to prove "that he has complied with all the requirements" of the ordinances in evidence, and that if they believe that "he has not made such proof" then they should find him guilty.

On behalf of appellee the following instruction was given:

"The court instructs the jury that if they find from the evidence that the defendant Fritz Griesbach complied fully with the laws and ordinances providing for the issuance of dram-shop licenses in the city of Chicago and the former village of Hyde Park, and did file the application

thereby required to be filed with the city authorities authorized to issue dram-shop licenses, and the petition therefor signed by a majority of the property owners according to frontage on both sides of the street in the block in which his dram-shop is kept as heretofore defined to you, then you should find the issues for the defendant Griesbach and find him not guilty."

Counsel for the People are correct in saying that by this instruction a mixed question of law and fact was submitted to the jury. But the instruction given at their instance was open to precisely the same objection. One cannot complain of error in his opponent's instruction where his own contains the same defect. Hacker v. Munroe, 176 Ill. 384, 394. Tendering the instruction for the People was equivalent to saying to the court, "This jury has a right to pass on the question whether the defendant has complied with all legal requirements," and the People are now estopped, so far as this case is concerned, from saying the contrary.

The judgment appealed from is affirmed.

*Affirmed.*