## Chicago Telephone Company v. Mary Schulz.

### Gen. No. 12,040.

1. RES IPSA LOQUITUR—*when doctrine of, does not apply.* The doctrine of *res ipsa loquitur* has no application as between master and servant.

2. SERVANT—*when justified in continuing in hazardous employment.* A servant is justified in continuing in hazardous employment for a reasonable time where the master has promised to repair the defect which occasions the hazard, unless the danger of so doing is so imminent that a person of ordinary prudence would not incur it.

3. INSTRUCTION—*when estoppel to complain of, arises.* A party cannot complain of the modification of an instruction where the substance of such modification is contained in an instruction given at his request.

4. RELEASE—*within what time minor may repudiate, upon attaining majority.* A minor upon attaining majority is entitled to the period within which an action may be instituted, to repudiate a release given during minority discharging defendant from liability on account of the cause of action.

Action on the case for personal injuries. Appeal from the Superior Court of Cook County; the Hon. ELBRIDGE HANECY, Judge, presiding. Heard in this court at the October term, 1904. Reversed and remanded. Opinion filed July 17, 1905.

**Statement by the Court.** This is an appeal from a judgment rendered in favor of appellee and against appellant, in an action in case for negligence, in the sum of $8,500. The jury assessed appellee's damages at the sum of $15,000, but, on motion for new trial, appellee remitted $6,500. Hereafter appellee will be referred to as plaintiff and appellant as defendant.

The suit was commenced June 20, 1901. December 9, 1902, the cause was called for trial and a jury empaneled, but on December 11, 1902, plaintiff withdrew a juror and thereupon the jury was discharged and the cause continued. March 25, 1904, the cause again came on for trial and a jury was empaneled, which jury, April 1, 1904, rendered a verdict for $15,000, as above stated.

The defendant's counsel, in their printed argument, set forth, substantially correctly, the counts on which the cause was tried, as follows:

"Second Count. Plaintiff on April 23, 1899, was a minor aged seventeen years; defendant was operating an electric telephone system in Chicago in one of its central offices at 151 East Twenty-second street; plaintiff was in defendant's employ as an operator in said office, and it was her duty to answer calls and operate the switchboard so as to establish a circuit between parties calling and being called, and to enable her to receive messages a receiver was attached to her head and left ear. The defendant knew, or with reasonable care could have known, that if an unusually large current of electricity were permitted to get upon the line or wire connected with said receiver, it would produce great bodily injury, possibly death, and it was defendant's duty to so skillfully care for and properly manage and operate its appliances as to prevent the entering of an extra large quantity or current of electricity on the wires and switchboard and into the receiver attached to plaintiff's ear and head. That defendant, not regarding its duty, etc., so wrongfully, negligently and carelessly managed and operated its wires, switchboards, receivers, transmitters, machin-

ery and other electrical appliances of its telephone system as aforesaid as to, by the negligent and unskillful operation of the same, as aforesaid, allow and permit an unusually large and powerful current of electricity to get into and upon the wires, switchboard, * * * etc., and by means thereof, while the plaintiff was employed at her duty, and while she was in the exercise of all due care and caution for her own safety and without warning or notice to her in any way, an unusually large current of electricity came in contact with the plaintiff from said receiver attached to the head and ear of the plaintiff, whereby she was greatly hurt and burned and rendered unconscious and sustained great bodily injury and pain, and became permanently deaf in the left ear, and suffered and still suffers and will continue to suffer nervous spasms; that she has become deformed and emaciated and sustained a nervous shock and has become permanently disabled, etc.

Third Count. Relations of the parties set forth as in previous count. That it was defendant's duty to properly, skillfully and carefully insulate and guard its said receiver attached to plaintiff's head and ear, wires, switchboards, transmitters, telephone and electrical appliances and other appurtenances thereof, which plaintiff was obliged to come in contact with while performing her duty as an operator, so as to prevent or avoid the introduction of an extra large, strong and powerful current of electricity to enter said receiver and other electrical appliances in and about where the plaintiff was at work. Yet the defendant, etc., kept said receiver so attached to the plaintiff's head and ear, as aforesaid, and other appliances herein mentioned, negligently, wrongfully, carelessly and improperly insulated and improperly guarded from foreign currents and unusually strong and powerful currents of electricity, by reason whereof, while the plaintiff was at work in the exercise of due care, etc., an extra large and powerful current of electricity came in contact with and into and onto the said receiver so attached to the plaintiff's head and ear, as afore-

said, and against the plaintiff, by reason whereof, etc., as in previous count.

Amended Second Additional Count. Relations of the parties as in previous counts. That it was defendant's duty to so construct, operate, control, insulate and use its wires, switchboards, etc., that they would be reasonably safe to the plaintiff, and whenever its wires, switchboards, etc., became worn and out of repair or improperly insulated and improperly guarded against foreign currents of electricity, to repair the same. Yet defendant, although notified that said electrical appliances and apparatus of said telephone system were out of repair and unsafe, and although said defendant then and there promised to repair the same and thereby induced the plaintiff to continue in her said. employment as such operator, relying upon such promise, yet the defendant negligently and carelessly permitted said telephone system, appliances and apparatus to be and remain in an unsafe and dangerous condition as aforesaid, in that the same had become worn and out of repair and improperly insulated and improperly guarded against foreign currents of electricity, by means whereof the plaintiff, while exercising due care, etc., an unusually large and powerful current of electricity came in contact with the plaintiff from said receiver attached to the head and ear of the plaintiff, whereby, etc., as in previous counts:

Amended Refiled First Original Count. Relations of parties as in previous counts. That it was defendant's duty to so construct, operate, control and use its machinery, etc., that they would be reasonably safe to the plaintiff; yet the defendant wholly disregarded its duty as aforesaid, and in a negligent and careless manner, and while the plaintiff was using all due care and diligence for her own safety, permitted and negligently caused an excessive, unusual and extraordinarily large voltage or current of electricity to pass through and over the wires and into the receiver attached to the plaintiff's head and ear and against the plaintiff, thereby, etc., as in previous counts."

The defendant pleaded the general issue to the whole

declaration, and the two years Statute of Limitations to the second and third counts, to which the plaintiff replied that she commenced suit within two years after she attained her majority. No question is raised as to the statute by defendant's counsel. Twenty-one witnesses were examined, and the evidence is quite voluminous. The plaintiff commenced work with the defendant, as a switchboard operator, at its office called South Exchange, in Chicago, the first part of August, 1898, and worked for defendant as a switchboard operator, until April 23, 1899, when she claims to have received the injury for which this suit was brought. She claims that about three o'clock in the afternoon of April 23, while attempting to answer a telephone call, she received an electric shock, which she attributes to the defendant's negligence as charged in the declaration. The evidence tends to prove that she became unconscious at that time and had to be carried into another room, where she was attended by a physician called by the defendant, and that, in about twenty minutes, she recovered consciousness, and went home from the office that evening, walking to and from the street cars on her way home, as usual. She returned to defendant's office in about a week or ten days, when she resumed her work as a switchboard operator, and continued in defendant's employ as such until April 15, 1901, almost two years after the time of the alleged injury.

Plaintiff also produced evidence tending to prove that prior to April 23, 1899, her health was good, and that since that date she has suffered from headache, earache and fainting spells, and has lost the hearing of her left ear, to which the telephone receiver had been attached by a device not necessary to be described, prior to and at the time of the alleged injury.

The day of the alleged injury was Sunday, and plaintiff testified that she reported to the chief operator, by local wire in the room in which she was working, on the Tuesday next preceding April 23, 1899, and again on the Friday or Saturday next preceding that date, "Position was rung down and cannot get anybody on it." She says that

37

the drop was down, and it was her duty to report as she did. Also, that on the morning of April 23 the drop was down, and Mr. Francis, the manager, came along and asked her why she did not answer the call, and she said there was something wrong with the wire, that she couldn't get anybody on it, and he said he would have it attended to and looked after. The chief operator testified that she received no report as testified to by plaintiff, and Francis testified that he had no recollection of such conversation as plaintiff testified to. Plaintiff further testified that she got calls all right on the line from that time till about three o'clock in the afternoon, when the accident occurred.

By "drop" is meant a small metal shutter working on a hinge at the bottom, and which is held in place at the top by a latch which is electrically released when a signal is given, and which should spring back, or be restored to its place, by means of apparatus arranged for that purpose. The uncontradicted evidence for the defendant is, that the failure of the drop to restore indicates something out of proper adjustment in the drop or in the restoring apparatus; also that there is no relation between the line current and the drop restoring mechanism, and that the fact of the drop not restoring indicates nothing as to there being an extraordinary current on the line. The uncontradicted evidence for defendant is that within about ten minutes after the plaintiff was carried from the room, the long distance chief operator, and also the chief operator in the room where the plaintiff worked, tested the line and found it perfectly clear; that they communicated with the long distance telephone company over the line at which plaintiff had been operating; that they talked with the long distance operator over the line, and that, on making the test, the apparatus of the switchboard showed no marks of burning, as defendant's witnesses testify it must have shown had an unusually large current passed over the wire. Hanson, the repairman, testified that about fifteen minutes after the accident he tested the line and found everything in perfect order. The only testimony as to the construction of the

telephone apparatus and its equipments, and the safety devices used for the protection of the operators, is that of the defendant's witnesses, and is, in substance, that all the apparatus was purchased from the Western Electric Company, which is the largest manufacturer of such apparatus in the country, and of the highest reputation, and was of the very latest type, and the best known to the art, in its method of construction and for protection to the operator, and that, at the time of the alleged accident and at the time of the trial, there was no better system known to the telephone art.

Sherwood J. Larned, superintendent of the defendant, called by plaintiff, testified that he had supervision of the office at the time of the alleged accident, and was familiar with the electrical appliances in use there. Recalled by the defendant, he testified: "The whole system that I have described, and as I know it from my own acquaintance with it at that time, was the most perfect that was known at that time for the protection of the operator at the switchboard in an exchange. It would have been impossible with the circumstances as they were, and as I have described them, for an operator at the switchboard, seated in her chair and operating in the usual way, to get an electrical shock in the ear through the receiver, either from the regular current or from a foreign or extraordinary current."

Miss Brogan, the chief operator in the room where plaintiff worked, and who was the supervisor of the other operators in that room, testified that she received a call, by wire in the room, from the plaintiff, asking, "May I be relieved?" that she immediately rose from her desk to ask another operator to take plaintiff's place, and in a couple of minutes after she received the call for relief, she saw the plaintiff's head fall back to the left side, and went to her and, with the assistance of Miss Barton, helped plaintiff from the room. Miss Ryan, an operator who sat about 18 inches to the right of plaintiff, saw her becoming unconscious. There is evidence tending to prove that plaintiff became unconscious twice before the alleged accident, while in defendant's employ. Miss Brown testified that part of

the time plaintiff was working for defendant she worked in the same office with her, but in April, 1899, she was working in another of defendant's offices; that one morning as plaintiff entered the office, she had a fainting spell and was carried into another room and laid on a couch, and did not come to for some time, and that, at another time, she had a fainting spell at the switchboard, that she keeled over while operating at the board and was carried out by the manager and Mr. Hanson, the repair man. Francis, the manager, and Hanson, the repair man, both corroborate Miss Brown as to plaintiff having had, prior to the time of the alleged accident, a fainting spell at the switchboard, and to having carried her out of the room. Hanson testified that operators are often taken sick or have fainting spells at the board. Miss Brown is the only witness to the first fainting spell above mentioned. The plaintiff, in rebuttal, denied that she ever had a fainting spell at the board, as described by Miss Brown, before the time of the alleged accident; but, as above shown, there are three witnesses against her.

During the time plaintiff worked for defendant after the alleged injury, there is no evidence that she did not work as well as formerly and as many hours per day, or that she lost any time.

HOLT, WHEELER & SIDLEY, for appellant.

BOWLES & BOWLES and J. L. BAILY, for appellee.

MR. JUSTICE ADAMS delivered the opinion of the court.

The plaintiff's counsel argue that the evidence shows that the plaintiff received an electric shock, and that the jury were warranted in so finding. In view of the conclusion we have reached, after a very careful consideration of the evidence and the arguments of counsel, we do not find it necessary, nor do we deem it expedient to pass on this question. It was incumbent on the plaintiff, on the hypothesis that she received an electric shock, to prove that the shock was occasioned by the defendant's negligence. Negligence

cannot be inferred from the fact of the shock. Plaintiff was in the defendant's employ, and the doctrine *res ipsa loquitur* has no application as between master and servant. Omaha Packing Company v. Murray, 112 Ill. App., 233, 238-9, and cases there cited.

The trial court, by instructions 12 and 15, instructed the jury, in effect, that if they believed from the evidence that the plaintiff received an electric shock, as alleged, that fact was not evidence of negligence on the part of the defendant, and that it was incumbent on the plaintiff to prove negligence of the defendant by a preponderance of the evidence. Yet, while counsel for appellee, in their printed argument, refer to these instructions without dissent, and disclaim reliance on the doctrine, they cite cases from other jurisdictions apparently in support of it. Counsel for plaintiff also rely on what they call a promise to repair. The evidence referred to in the preceding statement shows that all the plaintiff complained of was that the drop did not restore; that there was something wrong with the line, as she had gone in on it and could not get anybody, and that Mr. Francis, the manager, said he would have it attended to. But the evidence also shows, without contradiction, that the mechanism which operated the drop had no relation to the line current. Miss Kate Ryan, who sat about 18 inches from plaintiff, to her right, at the same switchboard, was called by plaintiff and testified, in substance, that she, the witness, had occasion to use the line sometimes two or three calls to the minute, and that at the time of the alleged accident, and immediately prior thereto, the drop acted as it always did, that it came down as it always did ever since witness had been operating where she then was. The evidence shows that there was no danger to be anticipated from the fact that the drop did not restore, and that the apparatus and line, almost immediately after the alleged accident, was found to be in perfect order. Had the line been tested just prior to the alleged accident, it is apparent from the evidence that the result would have been the same. Plaintiff, herself, testified that from the time

she spoke to Mr. Francis, in the morning, until three o'clock in the afternoon, she had no trouble with the line. Excluding the doctrine *res ipsa loquitur* as being inapplicable, we find no sufficient evidence of negligence on the part of defendant, as charged in the declaration. As the cause must be remanded for another trial, we will next consider certain alleged errors of the trial court.

We are of opinion that defendant's instruction 6, to the effect that the evidence is insufficient to support the amended second additional count of the declaration, should have been given. We find no error in the refusal of defendant's 25th instruction. Assuming that the wire was in a dangerous condition (which the instruction necessarily assumes), the plaintiff's evidence tends to prove a promise to remedy any defect in it, and this would justify the plaintiff in continuing to use it for a reasonable time in which to repair it, unless the danger of using it was so imminent that a person of ordinary prudence would not have incurred it. Offutt v. World's Columbian Exposition, 175 Ill., 472, 479. The instruction, both as asked and as modified and given, omits this element. For the same reason, we think the refusal of defendant's instruction 27 was not error. We think the instruction as modified and given should not have been given; but the modification of which plaintiff's counsel complain is substantially the same as language contained in plaintiff's 22nd instruction, and, therefore, plaintiff is not in a position to complain of it.

The plaintiff, May 2, 1899, when she was seventeen years and between two and three months of age, executed a release to the defendant. June 17, 1901, when she was nineteen years and four months of age, she, by letter to the defendant, disaffirmed the release. The court refused an instruction asked by defendant, to the effect that plaintiff did' not repudiate the release within a reasonable time after attaining her majority. We are of opinion that the refusal of the instruction was proper. The Supreme Court, in Cole v. Pennoyer, 14 Ill., 158; Blankenship v. Stout, 25 id. 116; Rucker v. Dooley, 49 ib., 377, and Keil v.

Healey, 84 ib., 104, have adopted the rule that an infant may avoid a deed of conveyance of land, made during minority, after attaining majority, within the time limited by the Statute of Limitations for bringing on action. We perceive no good reason why this rule should not apply equally to purely personal actions. The limitation in such cases as this is two years. Hurd's Statutes, 1903, p. 1207, sec. 14. The plaintiff repudiated the release within two years after she attained her majority, after which she brought suit June 20, 1901, also within the two years.

We think it unnecessary to consider in this opinion whether the damages are excessive.

The judgment will be reversed and the cause remanded.

*Reversed and remanded.*