## THE DIAMOND GLUE COMPANY

*v.*

## ALBERT KOZLOWSKI WIETZYCHOWSKI.

*Opinion filed April 18, 1907—Rehearing denied June 5, 1907.*

1. MASTER AND SERVANT—*owner of an elevator in a building not liable to servant as a carrier.* The rule that the owner of a passenger elevator in a building is a common carrier, and liable as such, has no application as between such owner and a servant engaged in running an elevator, particularly a freight elevator.

2. SAME—*mere happening of accident raises no presumption of master's negligence.* The mere falling of a freight elevator, resulting in an injury to the servant operating it at the time, raises no presumption of negligence by the master, and in order to recover the servant must aver and prove that the appliance was defective, that the master had notice thereof or ought to have had and that the servant did not know thereof and had not equal means of knowledge with the master, and that the defect was the proximate cause of the injury.

3. TRIAL—*what evidence raises a question of fact for the jury.* Proof that the cable of a freight elevator, being operated by the plaintiff as the defendant's servant, broke and that the elevator fell, together with proof that the cable was defective or insufficient, raises the questions of fact for the jury as to whether the defendant was chargeable with negligence or whether the defect was so open and obvious that the plaintiff would have discovered it by the exercise of ordinary care.

4. EVIDENCE—*rule as to use of memorandum by a witness.* A writing may properly be used for the purpose of refreshing the memory of a witness where he is able, after inspecting the writing, to testify to the facts from present recollection, or where, after inspecting the writing, he still has no independent recollection of the facts stated therein, but is able to state that he correctly reduced them to writing at the time of the occurrence or within such a time afterwards that he then had a perfect recollection of them.

5. SAME—*when use of memorandum is proper—right of cross-examination.* If a witness knows that the facts stated in a memorandum were recorded at a time when they were fresh in his memory, and that the memorandum would not have been made unless he knew the facts stated were true at the time, he may be allowed to use the memorandum, provided it is produced with an opportunity for cross-examination as to the same.

6. SAME—*when testimony based on memorandum should be excluded.* Testimony of an elevator inspector as to the condition of an elevator, based entirely upon a memorandum, should be excluded, where he admits that even after inspecting the memorandum he has no independent or present recollection of the facts, and where he does not testify that the memorandum was true and correctly stated the facts at the time it was made; and a refusal to exclude such testimony is not justified by the fact that he testified, without the aid of the memorandum, as to his name and occupation, and that he remembered the dampness and general surroundings when he inspected the elevator.

7. ARREST OF JUDGMENT—*after verdict all intendments are in favor of the declaration.* After verdict the rule that averments of the declaration are construed most strongly against the pleader is reversed and all intendments are then in favor of the declaration, and if there is one count of the declaration which is sufficient after verdict it is proper to overrule a motion in arrest of judgment.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. LOCKWOOD HONORÉ, Judge, presiding.

CALHOUN, LYFORD & SHEEAN, (ROBERT J. SLATER, of counsel,) for appellant.

J. W. SUTTON, for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

On March 12, 1904, appellant owned and operated a glue factory in the city of Chicago. The building consisted of three stories and above this a working platform. Running in a shaft between the first and third floors was a freight elevator used for conveying glue stock and other articles to and from the various floors. The elevator consisted of an open wooden platform about six by nine feet, sustained by a seven-eighths-inch wire cable fastened to the cross-beam at the top, and attached to the cross-beam was a spring, intended, in case the cable should break, to operate safety appliances, called "dogs," at the bottom of the ele-

vator, to prevent it from falling. The cable extended to sheaves and gearwork at the top of the building and from thence back to drums below, operated by belts and pulleys. The elevator was also supplied with a cable to start and stop it, and was adjusted so that it would stop automatically on reaching either the top or bottom floor. Appellee had been in the employ of appellant most of the time for about five years and for the last four years had been running the elevator. On the first floor was what was called a "wash-mill," where meat and other refuse used as glue stock was washed before being taken to the third floor, where it was boiled. After being washed the glue stock was put in trucks about four feet deep and smaller than the elevator. The trucks, when loaded, were pushed to the elevator and the appellee assisted in putting them on it, after which they were hoisted to the third floor and other laborers helped to take the trucks from the elevator. Each morning, on arriving at the factory, appellee would run the elevator until eleven or twelve o'clock, when the work with the elevator ended and he would then work with the other laborers, and usually assisted in loading material and taking it to the wash-mill. On the morning of said day appellee had taken two truck-loads of glue stock from the first to the third floor and a third truck was placed upon the elevator at the first floor, when he got upon the platform and pulled the rope to start the elevator. After passing the second floor, and when approaching the third floor, the hoisting cable broke, the elevator fell to the first floor, and appellee suffered injuries on account of which he brought this suit in the circuit court of Cook county against appellant.

There were originally three counts in the declaration, and the plea was the general issue. The first count alleged the employment of plaintiff, and charged the defendant with negligently allowing the ropes, chains, cables, appliances and machinery with which the elevator was equipped and operated, to become old, worn out and defective, so that while

plaintiff was rightfully upon the elevator, in the exercise of due care, said cables, chains, ropes, appliances and machinery broke and the elevator fell, causing plaintiff's injuries. The second count alleged that plaintiff had no knowledge of elevators nor the running nor operating thereof, nor of the dangers incident to the running and operating of elevators; that appellant negligently failed to notify and inform him of the dangers incident to the running and operation of said elevator, and that the cable broke and elevator fell, but it did not connect the falling of the elevator, or the injury, with any supposed fault or neglect of the defendant in failing to notify the plaintiff of the danger incident to running the elevator. The third count was dismissed on the trial. There was a verdict for $2500, and the court, after overruling motions for a new trial and in arrest of judgment, entered judgment on the verdict, which was affirmed by the Appellate Court for the First District.

It is first contended that the court erred in refusing to instruct the jury to find the defendant not guilty. The second count did not state any cause of action and there was no evidence tending to support its allegations. The uncontradicted evidence offered by plaintiff was that he had been operating the elevator for four years, and no reason was apparent why the defendant would be led to suppose that he was not familiar with the operation of the elevator or that he required any warning or instruction as to the dangers incident to running or operating elevators. Plaintiff was an experienced operator and assumed the risk of dangers ordinarily incident to his employment, and the evidence did not tend to prove that a failure to warn him of such dangers had any connection whatever with the accident.

There was some evidence, however, tending to support the first count of the declaration. One of the plaintiff's witnesses testified that two or three months before the accident he noticed the cable was rough and was in such condition that it would soon break. He said that he told other em-

ployees that the rope would soon break, but not the plaintiff, and plaintiff testified that he did not notice the condition of the cable and that he had no time to inspect or examine it, and knew of no change in it during the five years that he was around there. It is true that the other witness said that the cable was in such condition that anybody could see that it was out of order and would soon break, which would tend to prove not only that the cable was in bad condition, but also that the plaintiff knew or ought to have known of it. There was evidence for the defendant that the cable was in good condition, but we are not concerned with the weight of the evidence, and can only consider whether there was enough evidence tending to support the declaration to justify the submission of the issue to the jury. It is perhaps true that the doctrine of *res ipsa loquitur* is not applicable to an action of this kind by a servant against his master. (4 Thompson on Negligence, sec. 3909.) In such a case the mere happening of the accident raises no presumption that it was caused by negligence of the master. (*Spring Valley Coal Co.* v. *Buzis,* 213 Ill. 341.) It may have no tendency to show that the injury was the result of negligence on the part of the master, or it may have resulted from one of the risks which the servant assumed, or have occurred through the negligence of fellow-servants. In order to recover, the servant must go farther and aver and prove that the appliance was defective; that the master had notice thereof or knowledge, or ought to have had; that the servant did not know of the defect and had not equal means of knowing with the master, and that the defect was the proximate cause of the injury. (*Chicago and Eastern Illinois Railroad Co.* v. *Heerey,* 203 Ill. 492.) Persons operating elevators in buildings for the purpose of carrying passengers from one floor to another are carriers of passengers and are governed by the same rules applicable to other carriers of passengers; (*Hartford Deposit Co.* v. *Sollitt,* 172 Ill. 222; *Springer* v. *Ford,* 189 id. 430;) but it is

.conceded by counsel for plaintiff,—as, indeed, it must be,—
that such rules do not apply to or govern the rights of
parties as between an employer and a servant operating an
elevator, and especially a freight elevator, like this one. The
fact, however, that the cable broke and the elevator fell, to-
gether with the other evidence, tended to show that the cable
was insufficient or defective, and to raise questions for the
jury whether the defendant was chargeable with negligence
and whether the condition of the cable was so plain and ob-
vious that in the exercise of ordinary care the plaintiff would
have discovered it. We think that the court did not err in
refusing to direct a verdict for the defendant.

The only evidence as to the condition of the cable and
appliances, other than that already stated, was the testimony
of an elevator inspector in the employ of the city of Chicago.
He testified that he went to the glue factory four days after
the accident; that he had no independent recollection of the
condition in which he found the elevator without referring
to his memorandum; that he had a memorandum which
would refresh his memory, and after looking at that docu-
ment he could tell what the condition of the elevator was.
He was directed to look at the memorandum and after re-
freshing his memory to state what condition he found the
elevator in. Counsel for the defendant insisted that after
referring to the memorandum the witness must be able to
discard it and testify from an independent personal recol-
lection. The court directed the witness to read the memo-
randum, and after having read it the witness said that he
remembered the condition of the elevator but could not de-
scribe it exactly. The court asked him what he saw in re-
gard to the cable, and he replied that he saw that it was worn
out,—rusted out; that the safety device was not in order;
that the dogs, spring and lever were not in order, and that
they were all rusted out and not in working order. He was
then cross-examined to ascertain the basis of his testimony,
and he said that the memorandum had not been in his cus-

tody but had been in the building department, in the city hall; that he recognized it as his handwriting; that aside from the memorandum he had no recollection whatever of anything he saw at the plant of the defendant except the surroundings,—the dampness, and all that; that he had no recollection whatever concerning the safety dogs or the cable, or anything else, until he looked at the paper; that he had no independent recollection after looking at it, and that after looking at it he could not say that he had any independent recollection concerning what he saw. On motion of counsel for the defendant the testimony of the witness was stricken out. Afterward, the jury having been excused for the day, the court changed the ruling and held as follows: "I overrule this motion because in my opinion certain portions of the evidence should remain in." To this ruling defendant's counsel excepted. Subsequently, in argument to the jury, counsel for plaintiff, by permission of the court, stated, when he came to any point where he wanted to speak of the witness' testimony, that the ruling of the court excluding the same was afterward changed because the court considered some parts of it competent.

A witness can testify only to such facts as are within his own personal knowledge and recollection, but there are cases where writings may be used to assist his recollection and recall to memory forgotten facts. In Greenleaf on Evidence (vol. 1, sec. 437,) three cases are stated in which writings may be used for that purpose: First, where the writing is used only for the purpose of assisting the memory of the witness; second, where the witness recollects having seen the writing before, and although he has now no independent recollection of the facts mentioned in it, yet he remembers that at the time he saw it he knew its contents to be correct; and third, where the writing in question neither is recognized by the witness as one which he remembers to have before seen nor awakens his recollection to anything contained in it, but nevertheless, knowing the writing to be genuine, his

mind is so convinced that he is on that ground enabled to
swear positively as to the fact.   The exact extent to which
these rules should be recognized has never been defined by
this court, but we agree with what is said in Elliott on Evi-
dence, (vol. 2, sec. 859,) that the third proposition is too
broadly stated in permitting a witness, under all circum-
stances, to give his opinion that a fact exists merely because
it is stated in a document which he believes to be genuine,
when he remembers nothing of the facts stated and does not
even remember to have seen the document before.   The con-
clusion of a witness as to the existence of a fact derived from
a consideration of other facts by which his mind is con-
vinced ought not to be permitted to go to a jury, and the
illustrations given by Greenleaf are cases where the witness,
after seeing the writing, is able to state the fact positively
and of his own knowledge.   In *Dunlap* v. *Berry,* 4 Scam.
327, it was deemed proper for a witness to refresh his mem-
ory from the copy of an execution and return.   In *Miner*
v. *Phillips,* 42 Ill. 123, it was held a proper practice to per-
mit a witness to refer to a notice published in a newspaper
to refresh his memory for the purpose of fixing a date.   In
*Elston* v. *Kennicott,* 46 Ill. 187, it was said that a witness
can testify only to such facts as are within his own knowl-
edge and recollection, but that he is allowed to assist or re-
fresh his memory by the use of a memorandum or entry in
a book, but after refreshing his memory he must be able
to speak of the facts of his own recollection.   In *Chicago
and Alton Railroad Co.* v. *Adler,* 56 Ill. 344, it was said that
if a witness has no recollection of the circumstances and can
only say that they are true because he finds them on his
memorandum, it would not be proper for him to either speak
or read from the memorandum.   It was held, however, that
there is no objection to permitting a witness to refer to his
paper to ascertain dates, provided he can say that he knows
they are true because true when made and noted at the time.
In *Chicago and Wilmington Coal Co.* v. *Liddell,* 69 Ill. 639,

the court said that it was no objection to testimony if a witness is permitted to refer to a paper to refresh his recollection, provided he can say he knows the items to be correct because they were true when made and placed in his book. In *Wolcott* v. *Heath,* 78 Ill. 433, it was held error to direct the jury to disregard the testimony of a witness as to such matters as he knew only from his book. The dates and amounts of the several transactions he was unable to state except from the sale entries in his books, although he distinctly remembered the transactions. In *Bonnet* v. *Glattfeldt,* 120 Ill. 166, it was held proper for a witness to refresh his memory by using a copy or memorandum of entries in his books of accounts. In *Brown* v. *Galesburg Pressed Brick Co.* 132 Ill. 648, where a witness had a recollection about the facts but could not recollect or state the items without reference to his memorandum, he was permitted to refer to the memorandum and to have it open before him while testifying. In *Iroquois Furnace Co.* v. *Elphicke & Co.* 200 Ill. 411, it was said that a witness may use a memorandum to refresh his memory, but must be able to say, after having referred to the memorandum, that he remembers the facts about which he testifies. In all these cases the use of the writing or memorandum was spoken of as a means of refreshing the memory of the witness, but in some of them it is apparent that the witness had no recollection of the fact, and only knew that it existed because it was noted at the time and he knew that the memorandum was true when made.

Without attempting to state comprehensive rules applicable to all cases in which writings may be used to assist the memory of a witness, it may be said that a writing can properly be used for the purpose of refreshing the memory of a witness if he is able, after inspecting the writing, to testify to the facts from present recollection. The testimony of the witness in this case did not come within that rule, for the reason that he clearly stated he had no independent

recollection of the condition of the cable, dogs, or anything else about the elevator, even after looking at the memorandum. It did not revive his recollection or refresh his memory, and in testifying to the facts he relied solely upon the memorandum and testified to them because he found them written there. Another condition under which a writing may be used is where the witness, after inspecting a writing, still has no independent recollection of the facts stated therein, but is able to state that he correctly reduced them to writing at the time of the occurrence or within such a time afterward that he had a perfect recollection of them. If the witness knows that the facts were recorded at the time or when they were fresh in his memory, and that the memorandum would not have been made unless he knew the facts therein stated to be true when it was made, he will be permitted to make use of it, provided the writing is produced with an opportunity for cross-examination as to it, so that the jury may also draw their conclusion as to the fact. In this case there was no evidence whatever that the memorandum truthfully or correctly represented the condition of the elevator or its appliances. The witness did not testify that the memorandum was a correct and accurate record of what he found upon his inspection. He testified solely from the memorandum, and it contained all the evidence of the witness which was relevant to the issue. It is true that the witness testified to his name; that he was an elevator inspector, and that he went to the plant of the defendant and remembered the dampness of the place and the general surroundings and did not testify to such facts from the memorandum; but that evidence did not relate to the condition of the elevator or tend to prove the charge of negligence, and did not justify the court in changing the ruling and restoring the evidence to the record. Counsel for defendant had a right to insist upon his point, which was fairly made and presented to the court, and the fact that some preliminary or incidental statement not relevant to the issue was

not based on the memorandum did not justify the ruling. The evidence of the witness was incompetent.

There was a motion in arrest of judgment, which was overruled, and we are of the opinion that the ruling was correct because the first count was sufficient after verdict. If that count had been tested by demurrer, in which case its averments would have been construed most strongly against the plaintiff, the facts stated would have admitted of various conditions under which the defendant would not have been liable, but after verdict the rule is reversed and all intendments are in favor of the declaration. Viewed from that standpoint we think the court did not err in overruling the motion.

The judgments of the Appellate Court and circuit court are reversed and the cause is remanded to the circuit court.

*Reversed and remanded.*