## H. R. Heimberger, Administrator, Appellee, v. Elliott Frog & Switch Company, Appellant.

1. MASTER AND SERVANT—*what essential to recover for failure of former to comply with non-delegable duties.* In order for the servant to recover of his master for failure to provide a reasonably safe place in which to work or a reasonably safe appliance with which to work and which the master had not promised to remedy, it must be shown by the servant that the defect complained of existed, that the master had notice thereof prior to the injury or might have had by the exercise of ordinary care, that the servant did not know of the danger and had not equal means of knowledge with the master.

2. MASTER AND SERVANT—*what does not overcome presumption that former has exercised proper care.* The mere fact that the servant has been injured or killed by the existence of some abnormally unsafe conditions, is not sufficient to overcome the presumption of the law that the employer has exercised proper care. This rule must necessarily be adhered to under the law in all those cases wherein it does not appear that the appliance was originally defective or that it had formerly been out of repair, or that it had been long in use without inspection, or that the master had notice of the defect.

3. NEGLIGENCE—*as to whom doctrine res ipsa loquitur applies.* In a proper case, the doctrine *res ipsa loquitur* will be applied as between master and servant.

4. NEGLIGENCE—*effect of application of doctrine res ipsa loquitur.* The application of the doctrine *res ipsa loquitur* does not dispense with the rule that the party who alleged negligence must prove it. It merely determines the mode of proving negligence or what shall be *prima facie* proof of negligence.

5. NEGLIGENCE—*when doctrine res ipsa loquitur does not apply.* This doctrine is not properly applicable in any case where the party injured or his fellow-servants have the sole management and control of the things that caused the injury.

Action in case for personal injuries. Appeal from the City Court of East St. Louis; the Hon. W. J. N. MOYERS, Judge, presiding. Heard in this court at the October term, 1910. Reversed and remanded. Opinion filed November 11, 1911.

**Statement by the Court.** This is a personal injury case. Judgment was rendered for the plaintiff for $3,000, and the defendant company appealed to this court. The judgment was reversed by this court on the question of pleadings raised in the briefs; and the case is reported in 151 Ill. App. 318, where a statement of the case is found in so far as it was applicable to that decision. The case was then taken to the Supreme Court by a petition for *certiorari* and the judgment of this court was reversed and the cause remanded by the Supreme Court with directions to this court to consider the other errors assigned. See 245 Ill. 448.

At the time of the death of appellee's intestate, appellant was operating a manufacturing plant in the county of St. Clair, Illinois, in which it manufactured railway frogs and switches. It used in its plant an appliance called an air-hoist for lifting heavy objects and moving them about the plant. The hoist was about sixteen feet in length and weighed about six hundred and fifty pounds. The track or run-way on which this hoist moved was about fifteen feet above the ground and consisted of an iron rail with a flange at the top and bottom. The hoist consisted of a drum

and other equipments for applying air, attached to an iron frame consisting of an iron rail on each side of the hoist with a flange extending outward at top and bottom. An iron strap eighteen inches long, four inches wide and five-eighths of an inch thick was fastened across the top of the frame at each end by a bolt six inches long and five-eighths of an inch in diameter which passed down through the end of the strap and through the flanges of the frame. The hoist was suspended beneath the rail or run-way above mentioned, by means of two small trolleys, one at each end. These trolleys each consisted of two small wheels, one on each side of the rail or run-way, held together by a clamp and arranged to run upon the lower flange of the rail. A large bolt passing from the clamp of each trolley to the strap across the ends of the frame above described sustained the hoist. The hoist was provided with a cable with a hook to attach to objects to be moved. Two operating chains were also suspended from the hoist, by means of which the servants engaged in moving objects therewith, by applying or cutting off the air, could raise or lower the object attached at will. On the day appellee's intestate was killed he was standing under this hoist at the usual place from which it was operated, and with certain other servants was attempting to lift and move by means of this hoist, a railway frog weighing about fourteen hundred pounds. The hoist cable had been hooked onto the frog. The deceased by taking hold of the operating chain had caused the hoist to lift the frog about four or five feet above the ground; and it was being moved to another part of the plant by the hoist while other servants were steadying the frog, when without warning the bolts passing through the ends of the strap sustaining the lifting end of the hoist, gave way and caused the hoist to fall upon and kill the deceased.

The first count of the declaration charged that the appellant negligently failed to furnish proper safe-

guards to protect the employes in case the hoist should fall. The second count charged that the appellant negligently maintained said hoist in a dangerous and defective condition and construction, and negligently fastened together certain parts of the machinery with a certain iron bolt of insufficient strength.

PERCY WERNER and WISE, KEEFE & WHEELER, for appellant.

WEBB & WEBB and D. J. SULLIVAN, for appellee.

PER CURIAM. It is conceded by appellee that there is no proof in the record to sustain the first count of the declaration, and that the questions for us to decide now relate solely to the second count of the declaration, and the proof bearing thereon. The ground particularly relied on by appellant for the reversal of the judgment now is that the judgment is not sustained by the evidence. In addition to the facts already given in our statement above and in the said former opinion of this court, the evidence for the appellee in this record only discloses the following facts tending to show liability against the defendant, to wit: That the air-hoist in question had been in operation about one year before the injury to appellee's intestate, and during that time it was oiled and frequently inspected to see if it was all right, and sometimes the chain by which the power was turned on and off would break and be repaired, which was the extent of the prior defects and repairs; that the hoisting machine was maintained in the same way and manner as it was built and sent out by the manufacturer of it; that the two bolts on the lifting end of the machine, opposite the air-drum, the bolts passing through the iron strap and the flanges of the frame, were found broken after the accident, the breaks being in the threads of the bolts, and that the bolts had on each of them a small bright rubbed place on one side and

adjoining the farthest threads from the tap ends of the bolts; that the bolts did not seem to be worn and that the breaks presented clean bright surfaces when first broken, indicating sound material, although at the trial one of them looked dark because of time and influence of the air; that the deceased had nothing to do with the hoist except to operate it by pulling the chains to apply or remove the power, the machine being oiled and otherwise looked after by the master mechanic and the inspector; that the hoisting machine had a small vibration or oscillation given by the rollers, but no witness knew whether or not the bolts were loose or allowed any play at the time of the accident; that two or three other servants, co-workers of the deceased, had hold of the frog to steady it at the time it fell, who were some distance south of the deceased at that time; that the frog was being moved by the hoist, but the deceased was not operating it at the very time it fell, the hoist then being at the proper height; and that the two bolts that broke held the weight of the lifting end of the hoist and the weight of the frog also. Two of appellee's witnesses state positively that in their judgment the marks or bright places on the bolts had nothing to do with the breaking of the bolts. No witness was able to tell whether the nuts on the bolts were on the top of the cross plates or under the rails, but one witness thought they were on top of the plate and that the plate probably made the bright spots on the bolts. The superintendent of the appellant's plant testified for appellant that he had been in that position for fifteen years and in the foundry business for thirty-five years; that the hoisting machine had been made by the Curtis Manufacturing Company of St. Louis; that they were one of the most reputable firms in the country for building of air-hoists; that they purchased this machine about one year before the accident and that its capacity was 2,500 pounds under a factor of safety of five; that the frog being then lifted weighed be-

tween 1,350 and 1,400 pounds; that he examined the bolts after they broke and that their breaking strain would be about 9,000 pounds each, and that figuring on a factor of safety of five their breaking strain would be about 1,900 pounds each, or about 3,800 pounds for the two; that the weight of the hoist was about 650 pounds; that he examined the bolts at the time of the accident, and that there was nothing at all on the outside of the bolts or elsewhere which would indicate any weakness or defect in the bolts, and that they were the bolts that came with the machine; that the ordinary life of the machine would be about ten years, and that it was in the same condition as it was when received from the manufacturers; that his duties brought him in contact with that hoist probably twenty times a day; and that there was a special man at the plant to inspect it, and that it had been regularly inspected. He also stated that he did not think any man living could tell what caused those bolts to break; that they might have been cracked by tightening the bolts with a wrench, but that there was no possibility of doing so with a six or eight inch wrench, the kind that was used at the plant. In order for a servant to recover against his employer for failure to provide the servant a reasonably safe place in which to work, or a reasonably safe appliance with which to work, and which the master had not promised to remedy, it must be shown by the servant that the danger complained of existed, that the master had notice thereof prior to the injury, or might have had by the exercise of ordinary care, and that the employe did not know of the danger and had not equal means of knowledge with the master. L. E. and W. R. R. R. Co. v. Wilson, 189 Ill. 89; Swift & Co. v. Gaylord, 229 Ill. 338.

We have stated the substance of the evidence in this case bearing upon the material issues in full, except the further fact that the broken bolts were certified here as original evidence. We have exam-

ined them carefully and are not materially aided by them in solving the real cause of their breaking. Appellee's counsel admit that the bolts were proven to be of sound material and without defects, and of sufficient lifting strength for the work being performed when they were broken. They advance two theories of the cause of the breaking of the bolts, (1) that the frame was loose and caused it or the cross plate to play back and forth against the bolts and that the great weight of the frame and its burden with that leverage snapped the bolts; (2) the act of the machinist in setting the taps too tight when tightening them. They point to the bright or rubbed places on the bolts as sufficient evidence of the first cause.

There is no other positive proof in the record that the frames did thus play against the bolts. There is some evidence tending to show that the whole machine swayed or moved back and forth on the rail or runway, but that is no evidence of the frames being loose and playing against the bolts. The whole of this theory is rebutted by the positive evidence of all the witnesses that gave testimony bearing on it, and we are unable to say that the bolts furnish evidence to sustain it. They might tend to corroborate it if there was other evidence in the record that the bolts were thus strained. If it be conceded that the proof substantiates the appellee's first proposition, there is absolutely no evidence in the record that the appellant had notice of such a defect or by the use of ordinary care would have known of it. Such fact cannot be presumed without evidence. Therefore the appellee has failed to prove one material issue in the case. So far as appears from the evidence the bolts, if so worn, might have been thus worn and rubbed within the space of a few hours or minutes. There is absolutely no proof in the record to sustain the second theory of appellee as to the cause of the breaking of the bolts. The mere fact that an employe has been injured and

killed by the existence of some abnormally unsafe condition, is not sufficient to overcome the presumption of the law that the employer has exercised proper care.   The Joliet Steel Co. v. Shields, 146 Ill. 603.

This rule must necessarily be adhered to under the law in all those cases wherein it does not appear that the appliance was originally defective or that it had been formerly out of repair, or that it had been long in use without inspection, or that the master had notice of the defect.   It is true, however, that if there is any other specific testimony bearing on the question of negligence of the master, the servant is entitled to have it submitted to the jury.   Spring V. C. Co. v. Buzis, 213 Ill. 341.

It is insisted by appellee that the maxim of *res ipsa loquitur* applies in this case, and that he is sufficiently aided thereby to maintain his case; and that the presumption arising from that maxim in his favor is sufficient to cast the burden on the appellant to show that the breaking of the bolt was not due to negligence on its part.   It is argued on the other hand by appellant that the maxim of *res ipsa loquitur* is not applicable in any case where the servant is suing the master for damages for personal injuries on the grounds of the alleged negligence of the master.   Our Appellate Courts have frequently said this maxim is applicable in personal injury suits by employes against their employers, and the Supreme Court has apparently endorsed it in a few cases, as will appear from the following:   Armour v. Golkowska, 95 Ill. App. 492, affirmed in 202 Ill. 144; Goddard v. Enzler, Admr., 123 Ill. App. 108, affirmed in 222 Ill. 463; Elvis v. Lumaghi C. Co., 140 Ill. App. 112; Stephen v. Duffy, 142 Ill. App. 219, affirmed on other grounds in 237 Ill. 549; The Wight F. P. Co. v. Poczekai, 130 Ill. 139. The same doctrine is sustained in Houston v. Brush & Curtis, 66 Vt. 331; Olson v. Great N. Ry. Co., 68 Minn. 155; and LaBatt on Master and Servant, Sec.

834. There is no apparent reason why this maxim should not apply to some cases wherein the employer is being sued by the employe for personal injury, if the employer owes the employe a duty to protect him from the danger, and the defective appliance or agency that has injured the employe was not being operated, managed or controlled by himself or his fellow-servants. The circumstances surrounding a case where the maxim *res ipsa loquitur* applies amount to evidence from which the fact of negligence may be found. Chic. U. T. Co. v. Giese, 229 Ill. 264. The doctrine, however, does not dispense with the rule that the party who alleges negligence must prove it. It merely determines the mode of proving negligence, or what shall be *prima facie* evidence of negligence. The fact of the occurrence of the accident, together with the other specific testimony, must be sufficient to fairly tend to prove all the necessary averments of the declaration to entitle the plaintiff to recover, or his case should not be submitted to the jury. LaBatt on Master and Servant, Secs. 834 and 835; Libby, McNeill & Libby v. Cook, 222 Ill. 209. Where the proof of negligence is furnished through the maxim of *res ipsa loquitur*, the burden is not thrown on the defendant to satisfactorily account for the accident, but merely that of showing that he used due care. LaBatt, Sec. 834. The appellant in this case has rebutted all proof of negligence by showing that it had used due care in regard to this air-hoist, if we should hold that the maxim, *res ipsa loquitur*, was applicable. We must hold under the law as we understand it, that the maxim of *res ipsa loquitur* is not applicable to, and cannot be considered in, this case. The deceased was in control and management of the hoist at the time he was killed. His then employment was running this hoist by applying and cutting off the air or power by manipulating the chains. The frog and the hoist were under the management of the deceased and his co-servants.

These were the instrumentalities that caused his death. Neither of them was under the control or management of the defendant or any of its servants that were not fellow-servants of the deceased, at the time of his death. It is true one witness testified that the hoist was under the control of the appellant, or rather that the deceased did not have the hoist under his control and management. It is clear, however, that he only meant to say that the appellant looked after the oiling, repairing and inspecting of the machinery, and that the deceased only ran the machine after these things were done. In one sense appellant managed the whole plant and every place and tool in it, but not in the sense that permits the application of said maxim. "When the thing which caused an injury is shown to be under the management of the party charged with negligence, and the accident is such as in the ordinary course of things does not happen after those who have the care and management use proper care, the accident itself affords reasonable evidence in the absence of an explanation by the party charged, that it arose from want of proper care." The maxim is not properly applicable in any case where the party injured or his fellow-servants have the sole management and control of the things that caused the injury. Chic. U. T. Co. v. Giese, 229 Ill. 263; Schaller v. Ind. B. Ass'n., 225 Ill. 492; Diamond Glue Co. v. Wietzychowski, 227 Ill. 342; The T., W. and W. Ry. Co. v. Moore, 77 Ill. 217; North Chic. St. Ry. Co. v. Cotton, 140 Ill. 486; Kranz v. White, 8 Ill. App. 583.

Without the aid of the maxim aforesaid, the evidence of the appellee cannot be said to fairly tend to prove that the appellant was guilty of the negligence charged, even if it be conceded that there was a defect in the construction or erection of the air-hoist. There was certainly no evidence of knowledge or notice of any dangerous defect on the part of the appellant, whatever that defect may have been. The evidence

326    APPELLATE COURTS OF ILLINOIS.

does not disclose who, if any one, was guilty of negligence.

The judgment of the lower court is therefore reversed and the cause remanded.

*Reversed and remanded.*