## Minnie Orenstein, Appellee, v. Boston Store of Chicago, Appellant.

### Gen. No. 16,879.

1. MASTER AND SERVANT—*law infers master knew of structural defect.* Where a defect in an appliance is structural and the appliance is thereby rendered unsafe, the law infers that the master knew of the defect, and an employee who is injured in consequence of the defect need not show that the master had actual knowledge or notice of it.

2. NEGLIGENCE—*relation of master and servant does not preclude application of res ipsa loquitur.* In a personal injury action, where neither the question of fellow-servant nor assumed risk is involved, the existence of the relation of master and servant between the parties does not preclude the application of the rule *res ipsa loquitur.*

3. NEGLIGENCE—*where the rule res ipsa loquitur applies.* In a personal injury action, where plaintiff, a saleslady in defendant's department store, was struck by part of an electric fan fixture that became detached and fell, the doctrine of *res ipsa loquitur* applies.

4. VERDICT—*passion or prejudice.* The fact that a verdict is rendered for $3,000 and, after a remittitur of $1,500 is filed, a judgment is entered for $1,500 does not justify the conclusion that the jury were influenced by passion and prejudice where the verdict is not manifestly contrary to the evidence.

Appeal from the Superior Court of Cook county; the Hon. MARCUS KAVANAGH, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1910. Affirmed. Opinion filed January 29, 1913. Rehearing denied February 14, 1913.

WINSTON, PAYNE, STRAWN & SHAW, for appellant; RALPH M. SHAW, EDWARD W. EVERETT and J. SIDNEY CONDIT, of counsel.

McEWEN, WEISSENBACH, SHRIMSKI & MELOAN, for appellee.

MR. JUSTICE GRAVES delivered the opinion of the court.

This is an appeal from a judgment for $1,500, recovered against appellant for personal injuries sustained by appellee while working as a saleslady in appellant's department store, by being struck by a part of an electric fan fixture that became detached and fell. This fan fixture was suspended from the ceiling of the room and was attached thereto by a hook. The upper part of the fixture had nothing to do with the actual operation of the fans proper. The only office of this upper part was to sustain the lower part. The fan proper was constructed of two electrically driven circular fans, the faces of which were substantially perpendicular, which fans were attached to opposite ends of a cross-arm and faced in opposite directions. The cross-arm attached to the upright by a sort of turn table, so that when the fans were in operation they rotated around the upright by force of the resistance of the air against the blades of the fans. The exact means by which the lower or rotating part of this fan fixture was attached to the upper or stationary part is not made very clear by the evidence, but there is sufficient to show that the upper portion or connecting rod between the ceiling and the lower part of the fixture was threaded and screwed into a sort of yoke for a distance of about 7½ inches, and at the top of this yoke, when it was screwed onto the connecting rod, there was a lock-nut which was intended to serve the double purpose of preventing the yoke from unscrewing from the pendant rod, and of supporting a brass tube with a canopy at the top that together covered the connecting rod from the ceiling down to the lock-nut. The lower part of the fixture from the lock-nut down was enclosed in an iron casing that preventd the turntable, the yoke and the connection between the yoke and the connecting rod, from being seen until the casing was removed. The testimony further shows that the lowest part of this fixture did not reach the floor

by seven or eight feet; that when the fans were in motion the entire fixture was liable to sway slightly, if one of the fans revolved faster than the other, but that this motion did not affect the use or safety of the fan, or tend to loosen the parts of the fixture from each other, as it was so attached to the ceiling so as to permit such motion; that at the time of the injury complained of the fixture parted at the connection between the connecting rod and the yoke, and the lower part, including the yoke, the turntable, the cross-arm and the fans, fell upon appellee and injured her.

The declaration consisted of three counts. The negligence of appellant charged in the first count was, permitting the fans, motors and their fastenings to become defective and out of repair, and that the same became detached and fell and injured appellee. In the second count, that appellant so carelessly and negligently managed and operated its fan that it fell, and in the third count that appellant permitted the fan to be and remain insecurely fastened and attached after notice of its condition by reason of which it fell. Appellant insists that there is no proof of what, if any, defect in the fixture caused it to fall; that the doctrine of *res ipsa loquitur* does not apply; that the fact that the fixture fell is no evidence of negligence on the part of appellant; that there is no proof of any neglect of duty by appellant and consequently no proof to support the verdict and judgment and that the judgment is excessive.

The duty imposed by law on appellant was to use reasonable care to see to it that the place where appellee, its servant, was put to work was reasonably safe. If the facts disclosed by the record show appellant failed in that duty and that in consequence appellee was injured then appellant is liable. The particular defect in the fixture that caused it to fall is not shown by the evidence, but that it was a defect in its structure or installation is shown by the testimony of H. E. Bender, a witness for appellant, who said, "Un-

der ordinary conditions a fan of that character should hold indefinitely, if it is installed properly; no reason why it should not hold.'' It did not hold, therefore, if the testimony of Bender is true, and we must so treat it, it was not properly installed.

Making the parts of a fan fixture and putting the fixture together, and putting it into the building in position to be operated, are manifestly all part of the original construction of a completed and installed fan. It takes all those things to make it a complete fan and any defect in the way it was made, put together or installed, is a structural defect. Where a defect in an appliance is structural and the appliance is thereby rendered unsafe, the law infers that the master knew of the defect, and an employee, who is injured in consequence of the defect, need not show that the master had actual knowledge or notice of it. Alexander v. Town of Mt. Sterling, 71 Ill. 366; Linquist v. Hodges, 248 Ill. 491; Crown Coal Co. v. Hiles, 43 Ill. App. 310. But it is said we may not consider the fact that the fixture fell as any evidence of a defect or of the master's negligence; that the rule of *res ipsa loquitur* does not apply. It may be true that in suits by the servant against the master for personal injuries growing out of a failure of the master to perform his duty in regard to furnishing a reasonably safe place in which the servant is employed and reasonably safe tools and appliances with which to work that doctrine does not apply where the question of fellow-servant or assumed risk is involved, but it has never, so far as we are aware, been held in any case, where neither the question of fellow-servant nor the question of assumed risk were involved, that the mere fact that the plaintiff is the servant and the defendant is the master precludes the application of the rule *res ipsa loquitur*. The case relied upon by appellant, with apparently the greatest confidence, and which counsel says is the last expression of our Supreme Court on the question, is the case of Diamond Glue Co. v. Wietzychowski, 227 Ill. 338. That

case was begun by a servant of the defendant for injury resulting from the falling of an elevator which the injured servant was himself operating and which he had operated for four years. It was claimed by the plaintiff in that case that the elevator fell by reason of the breaking of a certain rope which it was claimed the master had suffered to become worn, weakened and out of repair, of which condition it was claimed the master had notice. To the facts in that case the Supreme Court held the doctrine of *res ipsa loquitur* did not apply, and said:

"It is *perhaps* true that the doctrine of *res ipsa loquitur* is not applicable to an action of this kind by a servant against his master. (4 Thompson on Negligence, sec. 3909.) *In such a case* (as the case then under consideration) the mere happening of the accident raises no presumption that it was caused by negligence of the master. (Spring Valley Coal Co. v. Buzis, 213 Ill. 341.) It *may* have no tendency to show that the injury was the result of negligence on the part of the master, or it *may* have resulted from one of the *risks which the servant assumed, or* have occurred *through the negligence of fellow-servants.*"

That decision falls far short of supporting the contention of appellant in this case. In this case appellant does not claim the injury resulted either from the act of a fellow-servant or from any condition the risk of which was assumed by appellee, or that appellee had anything to do with the operation or supervision of the fan or that she knew or could have known by ordinary care or by any means within her reach of the defective condition. It is also well worthy of note that, while the court held that the rule *res ipsa loquitur* did not apply in the Diamond Glue Co. case, *supra,* weight was given to the fact that the elevator did fall as evidence tending to show that the appliance was defective and insufficient. On this point the court says:

"The fact, however, that the cable broke and the elevator fell, together with the other evidence, tended to show that the cable was insufficient or defective,

and to raise questions for the jury whether the defendant was chargeable with negligence and whether the condition of the cable was so plain and obvious that in the exercise of ordinary care the plaintiff would have discovered it.''

Many other cases are cited by appellant in support of this contention, all of which are clearly distinguishable from the case at bar.  In many of these cases, as well as others to be referred to, expressions are used clearly indicating that it is the state of facts in each particular case that prevents the application of the rule in question, rather than its inapplicability to a given class of cases.  In the case of Spring Valley Coal Co. v. Buzis, 213 Ill. 341, cited by appellant, and also cited in the Diamond Glue Co. case, *supra*, the court said:

''The manner of and the circumstances under which an injury was received may furnish proof of such negligence.''

In the case of Illinois Cent. R. Co. v. Swift, 213 Ill. 307, a master and servant case, the court said, concerning the application of the doctrine in question:

''The doctrine only applies, however, where the machine, appliance or other thing from which the injury results is shown to be under the management of the defendant and the accident is such as in the ordinary course of things does not happen if those in control use proper care.  (1 Addison on Torts, sec. 33; North Chicago St. R. Co. v. Cotton, 140 Ill. 486; Chicago City R. Co. v. Barker, 209 Ill. 321.)  The doctrine does not apply here for the reason that the accident did not result from the condition in which the defendant placed and left the pile-driver.  The ropes that held it, as it had been left prior to the time the appellee approached it, were sufficient to maintain it in an upright position.  Had the ropes broken and the pile-driver fallen while appellee was ascending the first time and before either of the sheave-blocks had been removed, there would have been some ground for invoking the doctrine; but here the person injured had removed one-half the lines which the defendant had attached to

the pile-driver for the purpose of sustaining it in an upright position, and after doing that he climbed again up the leaning pile-driver, which, deprived of one-half the support which the defendant had provided, with its tendency to fall to the east, in which direction it was leaning, increased by the weight of appellee, fell and the injury resulted. As between plaintiff and defendant the pile-driver was not under the sole control or management of the defendant. On the contrary, the plaintiff was himself engaged in altering the condition in which it had been placed by the defendant. Under this state of the proof, it is not to be presumed that the rope was old and rotten or otherwise defective and that the defendant had actual or constructive notice of that fact.''

The case of Joliet Steel Co. v. Shields, 146 Ill. 603, is cited by appellants in support of this contention, and counsel quotes therefrom the following language of the court:

''As between master and servant it may be conceded that no presumption of negligence arises, on the part of the master, from the mere fact that the servant has been injured while in his employ.''

And then the court proceeds to show that the reason why the stated proposition might be conceded was that under the facts in that case it was not necessary to determine it, because there was express proof of negligence sufficient to sustain the judgment, and the judgment was affirmed.

In Drake Standard Mach. Works v. Brossman, 135 Ill. App. 209, Mr. Justice Adams, in distinguishing the case of Sack v. Dolese, 137 Ill. 129, says: ''In that case the plaintiff was a servant of the defendant, and *res ipsa loquitur* is not, *as a general rule,* applicable where the plaintiff is such servant.'' The court there recognizes the fact that there are cases where the plaintiff is a servant of the defendant where the rule does apply. A general rule always permits exceptions. In Chicago Tel. Co. v. Schulz, 121 Ill. App. 573, the court expressly says the doctrine of *res ipsa loquitur* has no

application as between master and servant, but in that case the plaintiff was operating a switchboard from which she received a current of electricity that injured her, and the proof showed she had complained to the master that the same was out of order and had been promised that the same should be repaired. The doctrine of assumed risk was, therefore, a controlling question in that case. Besides that, the court, in support of its conclusions that the doctrine in question did not apply, cites the case of Omaha Packing Co. v. Murray, 112 Ill. App. 233, which does not support the holding in the Schulz case. It was a *per curiam* opinion and holds merely that the doctrine "has never been extended to cases where the servant *who was operating the machine* or *his fellow-servant* was the injured party."  In that case, Mr. Justice Windes filed a dissenting opinion, citing many authorities, in which he concludes that the doctrine should apply to that case. In Krans v. White, 8 Ill. App. 583, the court said, "The rule has never been extended to cases where the servant who operated the machinery or his fellow-servant was the injured party."  In the following cases the various courts have held that in proper cases between master and servant the doctrine does apply. Armour v. Golkowska, 95 Ill. App. 492; Goddard v. Enzler, 123 Ill. App. 108; Diamond Glue Co. v. Wietzychowski, 125 Ill. App. 277; Heinberger v. Elliott Frog & Switch Co., 165 Ill. App. 316.

From a careful consideration of all the authorities cited or found we conclude that the existence of the relationship of master and servant between the parties is not conclusive of the question of the application of the rule *res ipsa loquitur,* and that in a suit begun by the servant against the master for injuries claimed to have resulted from a failure of the master to furnish a safe place for the servant to work in or safe appliances with or around which to work, if the injuries result from some defect in some machinery, appliances, place or thing with which the servant has

nothing to do, and about which he knows nothing, and could not in the ordinary course of things know anything, and when the injury is not caused by the act or neglect of a fellow-servant, the rule *res ipsa loquitur* applies. As the facts in the case at bar square with the foregoing conditions, the rule must be held to apply to this case. It follows that the proof of the happening of the accident, particularly when supported by the testimony of appellant's witness Bender, to the effect that the fixture would not have fallen, but would have remained indefinitely if it had been properly installed, and the testimony of Delsing, also a witness called by appellant, that "if the lock-nut did not yet loose it (the fixture) would not fall" is sufficient to establish the negligence of appellant, both in failing to have the fixture properly installed, and in permitting it to become out of repair, unless the same is rebutted by some other proof in the case tending to show due care. At least, it was sufficient to warrant the submission of the question of the master's negligence in these respects to the jury, and to support a verdict based on it. Diamond Glue Co. v. Wietzychowski, 227 Ill. 338, 343.

Evidently for the purpose of overcoming the presumption created by the proof of the happening of the accident, and the evidence above referred to, appellant undertook to prove inspection by it of this appliance. In this effort, it absolutely and signally failed. The only inspection shown was that made by electricians, and was for the sole purpose of keeping the fans and the electric motors, by which they were propelled, in running order, and the proof further established that the way the two parts of the fixture were joined together had absolutely nothing to do with the operation of the fan. No inspection was shown as to the manner of the installation of the fixture, or of the part of the fixture where the connecting rod was joined to the yoke, which was the point at which the part that fell was separated from the balance of the fixture. The only inspection that would have been effective to dis-

cover the defect that caused the injury was not made by any one so far as the evidence discloses. On the contrary, the only persons shown to have had anything to do with the inspection of the fixtures were the witnesses, Delsing and Bender. Delsing testified: ''I never took any notice of how it was installed  *  *  * did not disturb the pendant or the part connected directly with it. This was not touched at all.  *  *  * All I did was when there was something wrong I would be called to attend to it.'' And after testifying that some two weeks before the accident he had the fixture down to adjust the running part, he said: ''When I put the fan back two weeks before the accident, I did not make test to see whether or not pendant and other part was up there substantially. I only tried to see if it worked all right. I do not think it was part of my duties to see whether fan was securely fastened to pendant.'' The witness, Bender, was the head electrician of appellant. He testified: ''Tests are made when a fan is put up; it is a good precaution to take a weight and to suspend it to see if screw is properly driven and that it would suspend properly. Another way is to hang on to pendant with body (a man weighing 150 pounds) and jerking on it; that would give approximate idea of what fan would do. If there is any weakness, that would be the way to find out if a thing is strong or not. After this particular fan was installed, I made no test to ascertain whether it was in proper order.''  *  *  *  ''Took them (the fans) down for the purpose of cleaning and overhauling them.  *  *  * Am speaking more particularly of the motors and not as to whether it was properly fastened onto pendant. Never paid any attention to how it was fastened onto pendant.'' This was all the evidence introduced tending to show due care on the part of appellant, and the jury were fully warranted in finding it guilty of negligence.

The verdict was for $3,000. A remittitur of $1,500 was filed and judgment was rendered for $1,500. It

is claimed by appellant that the verdict is so excessive as to be evidence of passion and prejudice on the part of the jury. While damages to be allowed in personal injury cases arising from mere negligence must be limited to compensation only, what amounts to compensation and what exceeds that limit are questions upon which the minds of reasonable and fair men are apt to greatly differ, and cases are rare in which the size of the verdict alone is sufficient to warrant an appellate court in holding that the jury was influenced in bringing it by passion and prejudice. Each verdict must stand or fall on the facts in the particular case, and an appellate tribunal should not hold that a verdict is the result of passion or prejudice unless it is manifestly so. The evidence in this case tends to show that appellee sustained several painful bruises and cuts, one of which was on her face just above the eye, the scar from which was still visible at the time of the trial; that her nervous system was shattered and her general health impaired and that she was left subject to severe headaches, which were attributable to the blow on the head; and that she was under the doctor's care for six weeks, and that her health has not been as good since the injury as before. Appellant also admits that her direct financial loss in wages and doctor's bills amounted to approximately $250. We are not prepared to say that the verdict, as returned by the jury was so excessive as to indicate passion or prejudice, and certainly larger judgments for apparently less injuries have been frequently sustained by the courts. The case of Eidem v. Chicago, R. I. & P. Ry., 144 Ill. App. 320, is cited by appellant in support of the suggestion that the fact that the trial court required a remittitur rather tended to impeach than to sanctify a verdict. In that connection, it is interesting to note that when that case was retried, in the Circuit Court, a verdict for the plaintiff for $23,000 was returned by the jury, and a judgment was rendered for the full amount by the trial court, and the same Appellate

Court that reversed the first judgment affirmed the last one for $17,000, after requiring a remittitur down to that amount. Eidem v. Chicago, R. I. &. P. Ry., 158 Ill. App. 82.

We think the verdict of the jury in this case was warranted by the evidence. Finding no error in the record, the judgment of the Superior Court is affirmed.

*Judgment affirmed.*